IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSS DRESS FOR LESS, INC. : CIVIL ACTION
:
v. : No. 12-131
:
VIWY, L.P., et al. :

# MEMORANDUM

**Juan R. Sánchez, J.** September 19, 2017

Plaintiff Ross Dress for Less moves for confirmation of an arbitration panel's June 26, 2017, decision awarding Ross $1,800,018.69 on its breach of contract claim against Defendant VIWY, L.P. VIWY moves to vacate the arbitration award, arguing the arbitration panel (Panel) failed to properly apply the statute of limitations to Ross's claim. For the reasons discussed below, the Court will grant Ross's motion to confirm the arbitration award, and deny VIWY's motion to vacate.

In 2007, Ross and VIWP entered into a written lease agreement (the Lease), which contained a co-tenancy clause providing that Ross, a tenant in the retail shopping center owned by VIWP, would be entitled to pay a reduced "Substitute Rent" during any "Secondary Reduced Occupancy Period," i.e., a period, at any point after the commencement of the Lease, when specific nationally recognized retailers, or a specified number of retailers, are not open and operating at the shopping center.[1] Compl. Ex. A at § 6.1.3(a)-(c). On March 14, 2011, Ross, having determined that a Secondary Reduced Occupancy Period had occurred two years earlier without a corresponding rent reduction, made a written demand to VIWY for reimbursement of its two-year overpayment, but VIWY denied Ross's request. Ross nevertheless began offsetting

---

[1] The Lease obligates the landlord to notify the tenant of "any Reduced Occupancy Period." Compl. Ex. A at § 6.1.3(a).

its overpayment by paying Substitute Rent, and continued to do so through September 2011, when VIWY terminated the Lease.

Ross commenced this action in federal court on January 11, 2012, alleging VIWY breached the terms of the Lease by failing to notify Ross that a Secondary Reduced Occupancy Period had occurred beginning in March 2009, causing Ross to overpay its rent from March 2009 through September 2011. VIWY filed a motion to dismiss and compel arbitration, contesting the occurrence of a Secondary Reduced Occupancy and arguing Ross had improperly offset its rent from March 2011 through September 2011. The latter issue regarding the propriety of Ross's offset was an arbitrable issue pursuant to the arbitration clause in the Lease. *See* Compl. Ex. A at § 20.1.1(e).

On November 5, 2012, this Court issued an Order denying VIWY's motion as to Ross's breach of contract claim, and staying VIWY's arbitrable offset claim pending disposition of the overpayment issue. VIWY filed a notice of appeal, and on January 10, 2013, this Court stayed further proceedings pending resolution of the appeal. On July 1, 2014, the Third Circuit held the entire case was arbitrable, and this Court ordered the parties to proceed to arbitration on all claims, staying the case pending completion of the arbitration proceedings.

On March 20, 2015, Ross filed an arbitration demand with the American Arbitration Association. The parties conducted discovery and filed cross-motions for summary judgment. In its cross-motion, VIWY raised a statute of limitations defense, arguing Ross's claim was time barred because Ross filed its demand more than four years after becoming aware of the alleged breach of contract. On January 10, 2017, the Panel denied VIWY's statute of limitations defense. Following a two-day arbitration hearing on March 13-14, 2017, the Panel rendered its decision finding that VIWY "breached its contractual obligation to give Ross notice of a

Secondary Reduced Occupancy Period . . . during which Ross was continually entitled to a substantially reduced monthly rent," Pl.'s Mot. to Confirm Ex. A at 2, and awarding Ross $1,800,018.69 in damages, interest, fees, and costs, *id.* at 7. Ross seeks confirmation of that award pursuant to § 9 of the Federal Arbitration Act (FAA), 9 U.S.C. § 9.[2] VIWY argues the award must be vacated, as the Panel failed to properly apply Pennsylvania's four-year statute of limitations to Ross's breach of contract claim.

Under the FAA, "there is a strong presumption in favor of enforcing arbitration awards." *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 371 F. App'x 306, 308 (3d Cir. 2010). A court does "not review [an] arbitrator's decision for factual or legal error," and will not vacate an award based on "'serious errors of law or fact'" so long as the arbitrator "'makes a good faith attempt to [interpret and enforce the contract].'" *CD & L Realty LLC v. Owens Illinois, Inc.*, 535 F. App'x 201, 203 (3d Cir. 2013) (alterations in original) (quoting *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 220 (3d Cir. 2012), *aff'd*, 133 S. Ct. 2064 (2013)). In effect, the arbitrator must have "dispense[d] his own brand of industrial justice" to warrant vacatur. *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Indeed, a court "must grant" an order confirming an arbitration award "unless the award is vacated, modified or corrected as prescribed

---

[2] Section 9 of the FAA provides, in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.

3

in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9; *see Tenet HealthSystem Phila., Inc. v. Rooney*, No. 12-58, 2012 WL 3550496, at *1 (E.D. Pa. Aug. 17, 2012) ("'[M]indful of the strong federal policy in favor of commercial arbitration, [Courts must] begin with the presumption that the award is enforceable,' and must confirm the award unless grounds exist for vacating the award pursuant to Section 10 of the FAA" (alterations in original) (quoting *Sutter*, 675 F.3d at 219)).

A court may vacate an arbitrator's decision "only under exceedingly narrow circumstances." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003). The FAA permits a district court to vacate an arbitration award in four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Courts have also set aside arbitration awards when an arbitrator's actions constitute a "manifest disregard of the law," a judicially-created standard, *see Dluhos*, 321 F.3d at 369, though the viability of this basis for setting aside an arbitration award is unclear following the United States Supreme Court's 2008 decision in *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).[3]

---

[3] Prior to *Hall Street*, every Court of Appeals had held an arbitration panel's decision could be vacated based on the panel's manifest disregard for the law. *See Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 176 (3d Cir. 2010). In *Hall Street*, the Supreme Court held that § 10 of the FAA provides the exclusive grounds for vacatur of an arbitration award, *see* 552 U.S. at 586, but did not "clearly state whether 'manifest disregard' survived as a judicial . . . ground for vacatur," *Smith*, 389 F. App'x at 176 n.5. Following *Hall Street*, there exists a circuit split as to whether manifest disregard of the law remains a valid ground for

VIWY argues the Panel's award must be vacated because the Panel's decision regarding the statute of limitations constituted manifest disregard of state law and the Third Circuit's July 1, 2014, Opinion directing this Court to enforce the arbitration clause in the Lease. Even assuming manifest disregard of the law remains a valid ground for vacating an arbitration award, the Panel here did not manifestly disregard Pennsylvania's statute of limitations or the Third Circuit's decision.

A party seeking vacatur of an arbitration panel's award on the ground of manifest disregard of the law must demonstrate that the arbitrators "(1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 176 (3d Cir. 2010). A court "may not reevaluate supposed inconsistencies in the arbitrator's logic or review the merits of the arbitrator's decision." *Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 533 (3d Cir. 1985). The "manifest disregard" doctrine "is to be used only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [vacatur] provisions of the [FAA] apply." *Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005) (alterations in original) (internal quotation marks and citation omitted). VIWY "bears the burden of proving that the arbitrators

---

vacatur, and the Third Circuit "has not yet entered that debate." *Id.* at 176-77; *see Whitehead v. Pullman Group, LLC*, 811 F.3d 116, 121 (3d Cir. 2016) (noting the Third Circuit "has not yet weighed-in" on the circuit split that has developed since *Hall Street*). Courts within this Circuit have taken inconsistent views on this issue. *Compare Knabb Partnership v. Home Income Equity, LLC*, No. 12-373, 2017 WL 1397247, at *2 (E.D. Pa. Apr. 19, 2017) ("I will . . . assume without deciding that manifest disregard of the law remains a viable basis for vacatur") *with Royal Bank Am. V. Kirkpatrick*, Nos. 11-1058, 11-1112, 2011 WL 4528349, at *4 (E.D. Pa. Sept. 30, 2011) ("We conclude that given the observation of the *Hall Street* Court, manifest disregard is not an independent basis for vacating an arbitration award.").

5

were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Id.*

In considering VIWY's statute of limitations defense, the Panel concluded:

Pennsylvania law is unsettled as to whether its Statute of Limitations must be applied in private binding arbitration proceedings or whether applying the Statute is left to the discretion of the arbitration tribunal. We need not decide that issue. If the Statute were applied, we find that it was tolled when ROSS initiated its case in the federal district court.

Section 20.2.1 of the Lease states:

'All disputes, the monetary value of which exceeds Fifty Thousand Dollars ($50,000), or which involve an equitable remedy, shall first require the utilization of Mediation as provided in Section 20.2.2 below. All disputes, the monetary value of which is Fifty Thousand Dollars ($50,000) or less shall be settled by arbitration as discussed in Section 20.2.3 below.'

The monetary value of this dispute exceeds Fifty Thousand Dollars ($50,000) and it did not settle in mediation.

Section 20.2.2 states:

'If the Dispute or any part thereof has not been resolved by mediation . . . the Dispute shall be determined by suit or action in court, unless it is a matter for arbitration as described in Section 20.2.1.1 above.'

The monetary value of this dispute is not less than $50,000 and it did not settle in mediation. It is not 'a matter for arbitration as described in Section 20.2.1.1' of the Lease. Therefore, ROSS complied with the Lease by initiating the Court Action, thereby tolling the Pennsylvania Statute of Limitations, if it is applicable to this private binding arbitration proceeding.

Further, VIWY having prevailed in moving the federal district court to send the dispute to private binding arbitration, after the 4 year statutory period, cannot now successfully argue that ROSS' claim is barred by the Pennsylvania Statute of Limitations.

ROSS timely filed the Court Action in January, 2012 and has never stopped pursuing the Action. The purposes behind the Pennsylvania Statute of Limitations are not violated by allowing ROSS claim to proceed.

Pl.'s Mot. to Confirm Ex. B at 5-6. The Panel thus found Ross's timely filing of its complaint asserting a breach of contract claim in federal court in January 2012 tolled the statute of limitations as to that claim.

VIWY maintains that Ross—having charged VIWY with breach of contract by letter dated March 14, 2011—was required to file its arbitration demand no later than March 14, 2015. Thus, because Ross filed its demand for arbitration on March 20, 2015, its breach of contract claim is time-barred as a matter of law. VIWY further argues that because the Third Circuit held that Ross's breach of contract claim—including the overpayment and offset issues—should be resolved through arbitration, Ross's filing of its federal complaint did not toll the statute of limitations. By finding otherwise, VIWY argues, the Panel disregarded the Third Circuit's decision "establishing that the only forum in which Ross could properly bring its breach of contract claim was arbitration," and misapplied the Pennsylvania statute of limitations. Def.'s Mem. in Opp'n 10. The Third Circuit, however, did not explicitly rule that Ross brought its claim in the wrong forum, but instead held that because the overpayment and offset issues turned on the same underlying question of fact and were therefore inextricably linked, the "presumption of arbitrability militate[d] in favor of resolving both in arbitration."[4] *Ross Dress for Less, Inc. v. VIWY, L.P.*, 570 F. App'x 123, 126 (3d Cir. 2014). In so holding, the Third Circuit confirmed this Court had jurisdiction over the matter.[5] *See id.* at 125 n.2. Thus, it is not evident to this

---

[4] As Ross points out, VIWY's offset claim—the arbitrable issue—was not raised until VIWY filed its motion to dismiss in this Court; when Ross filed its Complaint, there was no arbitrable issue pursuant to the terms of the Lease, as the damages alleged were above $50,000. *See* Pl.'s Mot. to Confirm Ex. C at § 20.2.1-.2 (providing that where a dispute cannot be resolved by mediation, the dispute "shall be determined by suit or action in court," unless it has a monetary value of $50,000 or less and is thus a matter for arbitration).

[5] Indeed, this Court has maintained jurisdiction over this matter even during the pendency of the arbitration proceedings. *See* Order, July 23, 2014, ECF 28 (staying case pending completion of

Court that the Panel misapplied the statute of limitations under Pennsylvania law or ignored the Third Circuit's opinion by finding the statute of limitations was tolled when Ross filed its Complaint. Notably, VIWY has failed to present any case law indicating a timely filed federal complaint, containing a claim that is ultimately deemed arbitrable, does not toll the statute of limitations.[6] Without clearly defined legal precedent on point, the Court cannot find the Panel manifestly disregarded law. *See Black Box Corp.*, 127 F. App'x at 25; *see also Cacace Assocs. v. S. N.J. Bldg. Laborers Dist. Council*, No. 07-5955, 2009 WL 424393, at *5 n.4 (D.N.J. Feb. 19, 2009) (refusing to "vacate an arbitration award over a mere disagreement over the correct application of law" where plaintiff "fail[ed] to enunciate a clear, explicit legal rule that the Arbitrator acknowledged and subsequently disregarded in making his decision"); *Jeffrey M. Brown Assocs. v. Allstart Drywall & Acoustics, Inc.*, 195 F. Supp. 2d 681, 684 (E.D. Pa. 2002) ("Other courts have held that the 'manifest' disregard principle means that the correct legal standard must have been so obvious that the typical arbitrator would readily and instantly have perceived it, the arbitrator must have been subjectively aware of that standard, and he must have

---

arbitration proceedings and directing the parties to submit a joint report on the status of the arbitration proceedings every 90 days until the proceedings had concluded); *see also Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 270 (3d Cir. 2004) (noting that a district court "has a significant role to play under the FAA even in those instances in which the District Court orders the arbitration of all claims," as "[e]ven in those instances, the parties are entitled to seek the Court's assistance during the course of arbitration" and "after an arbitration award is rendered, a party is entitled to seek relief in the District Court in the form of a judgment on the award or an order vacating or modifying the award").

[6] VIWY argues that, under Pennsylvania law, "if a plaintiff mistakes his remedy" and "during the pendency of the action[] the limitations runs, the remedy is barred." Def.'s Mem. in Opp'n 9 (quoting *Royal-Globe Ins. Cos. v. Hauck Mfg. Co.*, 335 A.2d 460, 462 (Pa. Super. Ct. 1975), citing other Pennsylvania cases). However, the cases cited by VIWY stand for the principle that an action in state court does not toll the running of the statute of limitations against a subsequent action in federal court, and vice versa. Again, the Court finds Ross did not "mistake [its] remedy" by filing in federal court, as it is not clear Ross had no remedy for the sole overpayment issue it brought in federal court, and the Court retained jurisdiction over the matter, with the authority to affirm or vacate the Panel's decision.

proceeded to ignore that standard in fashioning the award."); *Aetna Cas. & Sur. Co. v. Dravo Corp.*, No. 97-149, 1997 WL 560134, at *2 (E.D. Pa. July 31, 1997) ("In certain circumstances, the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug." (quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 10 (1s Cir. 1990))).

Even if this Court were to find the Panel improperly applied the statute of limitations, courts of appeals in other circuits have recognized this type of error typically falls short of a manifest disregard of the law. *See DeMartini v. Johns*, No. 15-15205, 2017 WL 2466717, at *1 (9th Cir. June 7, 2017) ("We cannot conclude from the record that the arbitrator's decision—while perhaps an erroneous application of the California statute of limitations for legal malpractice claims—constitutes a 'manifest disregard' of law."); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) ("Even assuming the Arbitrator erred in applying the statute of limitations (which is certainly not clear from the record), that 'mere mistake' would not justify vacatur."); *Raymond James Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 66 (1st Cir. 2015) ("[A]ny error by the panel in refusing to dismiss [plaintiff's] claims as untimely does not rise to the level necessary to justify vacatur."). Thus, any misapplication of the statute of limitations does not warrant vacatur.[7]

---

[7] VIWY relies on *Hasbro, Inc. v. Amron*, 419 F. Supp. 2d 678 (E.D. Pa. 2006), in arguing the Panel's failure to properly apply the statute of limitations constituted manifest disregard of the law. *See* Def.'s Mem. in Opp'n 7. In *Hasbro*, the court concluded the panel's "failure to properly apply the statute of limitations . . . [rose] beyond a simple error of law to a manifest disregard of the law because if petitioners' counterclaim were barred by the statute of limitations, it had no cause of action." 419 F. Supp. 2d at 689. VIWY's reliance on *Hasbro* is misplaced. The *Hasbro* court found the claims at issue were clearly barred by the statute of limitations; the case did not involve claims that had been timely filed in a different forum. Even if this Court were to find the Panel in this case improperly applied the statute of limitations, the Court is not convinced the *Hasbro* court correctly applied the high level of deference owed to arbitrators'

VIWY further argues the Panel exceeded its powers under § 10(a)(4) by "irrationally" ignoring the applicable statute of limitations under Pennsylvania law. A panel of arbitrators exceeds its powers and "subjects [its] award to judicial vacatur" where it "decides an issue not submitted to [it], grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter*, 675 F.3d at 219–20. A party seeking relief under § 10(a)(4) "bears a heavy burden," as it must show the arbitrator acted "outside scope of his contractually delegated authority," such as by "issuing an award that simply reflect[s] [his] own notions of [economic] justice rather than draw[ing] its essence from the contract." *Sutter*, 133 S. Ct. at 2068 (alterations in original). Indeed, the irrationality standard is so deferential that a court "may not overrule an arbitrator simply because [it] disagree[s];" rather, "[t]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295–96 (3d Cir. 2010).

The Panel performed a careful analysis of VIWY's statute of limitations defense, considering the language of the Lease and the parties' actions as they pertained to the statute of limitations. As such, the Panel's reasoning was not irrational. Nor did the Panel assume a power that was not bestowed upon it. *Cf. Stolt-Nielsen*, 559 U.S. at 673-74 (holding arbitration panel exceeded its powers under § 10(a)(4) where the it "proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied"). The Court therefore declines to vacate the arbitration award pursuant to § 10(a)(4).

---

decisions, as applied by other courts considering this same issue. *See DeMartini*, 2017 WL 2466717, at *1; *Cooper*, 832 F.3d at 546; *Fenyk*, 780 F.3d at 66.

Because VIWY has failed to carry its heavy burden of showing the Panel's award warrants vacatur, its Motion to Vacate will be denied, and Ross's Motion to Confirm will be granted. An appropriate Order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.